**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROCKY ALLEN,

    Defendant - Appellant.

No. 16-1450
(D.C. No. 1:16-CR-00067-RM-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **LUCERO**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Rocky Allen pleaded guilty to tampering with a consumer product in violation of 18 U.S.C. § 1365(a) and to obtaining a controlled substance by deceit or subterfuge in violation of 21 U.S.C. § 843(a)(3) and (d)(1). At sentencing, Allen argued that a comparison of sentences imposed on similar defendants in similar cases compelled the district court, under 18 U.S.C. § 3553(a)(6), to vary downward from the Guidelines range and to sentence Allen to 30 months' imprisonment. Instead, the district court varied upward from the Guidelines range and sentenced Allen to a

_____

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

prison term of 78 months. On appeal, Allen argues that the district court committed procedural error in sentencing him. We disagree and affirm.

## I

The convictions at issue in this appeal arose from Allen's employment at Swedish Hospital (Swedish). Allen wasn't authorized to possess fentanyl—an opioid and Schedule II narcotic. Nevertheless, on January 22, 2016, Allen filled a syringe with saline and falsely labeled it with a sticker identifying its contents as fentanyl. He then entered an operating room and, while the other medical personnel were preparing a patient for surgery, took a syringe that was loaded with fentanyl and replaced it with the syringe containing saline. Another hospital employee caught him in the act. Allen was HIV positive. At a cost of over $800,000, Swedish contacted over 2,600 patients, offering testing for HIV, Hepatitis B, and Hepatitis C.

Based on this incident, the government charged Allen with tampering with a consumer product in violation of § 1365(a) (count one) and obtaining a controlled substance by deceit or subterfuge in violation of § 843(a)(3) and (d)(1) (count two). Allen pleaded guilty.

The district court calculated a total offense level of 24 and a criminal-history category of I, yielding a Guidelines imprisonment range of 51 to 63 months. Allen moved for a downward variance, arguing that to avoid unwarranted sentencing disparities, the court should sentence him below the Guidelines range. In support, he provided a comparative analysis of 19 cases involving health-care employees convicted under § 1365(a) who had similar offense conduct, Guidelines ranges, and

2

criminal histories. To compile this list, Allen searched for charges under § 1365(a) in the nationwide ECF Pacer database, eliminated cases involving convictions under § 1365(a)(2) and (3) (which involve resultant serious bodily injury or death), and eliminated cases in which defendants were originally charged under §1365(a), but later pleaded guilty to only a lesser offense. Allen explained that a comparison of the sentences in these cases, which ranged from diversion to 82 months, revealed that the mean sentence was just under 18 months, and the median sentence was one year and a day. And while Allen acknowledged his criminal conduct and the effect it had on Swedish and its patients, he urged the court to consider, in mitigation, his success while on pretrial release, his minimal criminal history, the severe physical and sexual abuse he endured during his childhood, his service to his country in Afghanistan and the trauma he experienced there, and his ongoing drug addiction and mental illness, including Post-Traumatic Stress Disorder (PTSD). Allen proposed a 30-month sentence. The government, conversely, moved for an upward variance and a sentence of 120 months' imprisonment.

The district court acknowledged Allen's statistical analysis. It noted that "the whole concept of Federal sentencing is to be roughly within arm's reach, if you would, of others who are similarly situated." R. vol. 3, 229. Noting that Allen's Pacer methodology was only one way to assess national sentencing practices, the court explained that it had obtained data from the Sentencing Commission relevant to §1365(a) and the applicable sentencing guideline, U.S.S.G. § 2N1.1. The district court noted that the takeaway from that data was that courts often "don't pay a whole lot of attention to" the applicable

3

Guideline. R. vol. 3, 224. And the district court further noted that a Westlaw survey yielded seven comparable cases in which the defendants received sentences significantly longer than Allen's calculated mean.

Accordingly, the district court said it would "sentence [Allen] on the basis of the facts in this case, and not be unduly influenced by the various mass of cases that exist across the country." *Id.* The district court emphasized that it had considered each of the sentencing factors under § 3553(a). Specifically, it recognized the existence of a number of mitigating factors, such as Allen's childhood abuse, his military service, and his PTSD. But countering these mitigating factors was the number of "breaks" Allen had been given because of his PTSD, including a sentence reduction in military court and his general discharge despite his military conviction. *Id.* at 307. The court noted its concern that Allen recognized his PTSD only when it served to benefit him, instead of seeking the help necessary to heal. Regarding Allen's opioid addiction, the court pointed out that Allen had "multiple opportunities to step away," but instead persisted in repeatedly lying and stealing fentanyl from the hospitals where he worked. *Id.* at 308. The court also described the "massive collateral damage" caused to Swedish and its patients due to Allen's actions. *Id.* at 297, 309. And the court observed that Allen's conduct demonstrated a disdain for the welfare of others.

Ultimately, after balancing the § 3553(a) sentencing factors, the court varied upward from the Guidelines range by imposing a 78-month prison sentence on count one and a concurrent 48-month sentence on count two. Allen appeals.

## II

On appeal, Allen raises a procedural challenge to the district court's method of calculating his sentence. A sentence is procedurally unreasonable "if the method by which it is calculated is unreasonable." *United States v. Hall*, 473 F.3d 1295, 1311 (10th Cir. 2007). When reviewing the method used to calculate the sentence, this court reviews the district court's legal determinations de novo. *Id.*

Under § 3553(a)(6), a district court must consider "disparities nationwide among defendants with similar records and Guideline calculations." *United States v. Verdin-Garcia*, 516 F.3d 884, 899 (10th Cir. 2008) (emphasis omitted). This factor recognizes the "unquestioned" precept "that uniformity remains an important goal of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 107 (2007). However, "disparate sentences are allowed where the disparity is explicable by the facts on the record." *United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006) (quoting *United States v. Goddard*, 929 F.2d 546, 550 (10th Cir. 1991)).

Allen argues that the district court applied an incorrect, impossible-to-meet legal standard when it calculated his sentence. He asserts that instead of comparing defendants with "similar records and guideline calculations" as required under § 3553(a)(6), Aplt. Br. 17 (quoting *United States v. Franklin*, 785 F.3d 1365, 1373 (10th Cir. 2015)), the district court rejected Allen's proffered comparison analysis, which included that information. "[I]n effect," Allen argues, the district court improperly required an "identical" case for comparison purposes. *Id.* at 24.

True, the district court criticized the analysis Allen presented. And it rejected the conclusion Allen argued that his analysis compelled. But as Allen admits, the district court didn't reject his comparative case analysis outright. Rather, the record reveals that the district court considered the data and ultimately rejected Allen's conclusion that it compelled a sentence of 30 months of imprisonment. In doing so, the district court considered its own research—research it collected using alternative methods—and concluded that the sentences of comparable defendants were higher, lower, or the same as what Allen proposed. Then, the district court weighed the facts supporting Allen's request for a downward variance and the government's request for an upward variance. Ultimately, the district court determined that an upward variance from the Guidelines range was appropriate under the facts of Allen's case.

We find no error in this approach; the cases Allen cites didn't compel the district court to use a different procedure. Allen correctly points out that when a defendant fails to offer enough information "for the district court to make a full comparison under § 3553(a)(6)," Aplt. Br. 17, we regularly reject any argument that the district court erred in not conducting this analysis. *See Franklin*, 785 F.3d at 1372-73 (affirming sentence in part because defendant provided 16 dissimilar cases to support argument that sentence was unprecedented); *United States v. Lewis*, 594 F.3d 1270, 1276 (10th Cir. 2010) (finding no procedural error where district court rejected defendant's analysis listing 28 defendants convicted of similar crimes, but failing to include those defendants' offense levels, criminal histories, or offense conduct); *cf. United States v. Boneshirt*, 662 F.3d 509, 519 (8th Cir. 2011) (affirming

district court's rejection of § 3553(a)(6) argument where defendant cited cases with similar convictions without providing information about the specific conduct involved). But nothing in these cases suggests that when a defendant *does* provide sufficient data, the district court must (1) consider only those cases the defendants cites or (2) adopt the methodology the defendant used to extrapolate a proposed sentence from those cases.

Under these circumstances, we conclude the method the district court used to calculate Allen's sentence was reasonable.

Affirmed.

Entered for the Court

Nancy L. Moritz
Circuit Judge